215 F.2d 955
 Daniel Castaneda GONZALES, Appellant,
v.
H. R. LANDON, District Director of Immigration and Naturalization of District No. 16, and Herbert Brownell, Attorney General of the United States, Appellees.
 No. 13929.
 United States Court of Appeals Ninth Circuit.
 September 8, 1954.
 
 David C. Marcus, Los Angeles, Cal., for appellant.
 Laughlin E. Waters, U. S. Atty., Clyde C. Downing, Robert K. Grean, Asst. U. S. Attys., Los Angeles, Cal., for appellee.
 Before STEPHENS, FEE and CHAMBERS, Circuit Judges.
 JAMES ALGER FEE, Circuit Judge.
 
 
 1
 This proceeding is for declaration of citizenship. Gonzales alleges he was born at Santa Rita, New Mexico, July 21, 1924. It is also alleged he is confined for deportation. The answers were denials of citizenship and, affirmatively, that plaintiff remained out of the United States in time of war for the purpose of evading military service and that there was no claim upon which relief could be granted.
 
 
 2
 It was stipulated at trial that plaintiff was born in the United States and, when less than two years of age, was taken to the Republic of Mexico. There are implications in the testimony that his parents were both aliens and citizens of Mexico, but the point was not developed. Plaintiff testified that from 1926 to 1946 he resided in Favela, Chihuahua, Mexico. His father died, and plaintiff testified he did not come to the United States because his mother would not let him. He testified he registered for military service in Mexico in 1942. He also stated that he was admitted to the United States on April 23, 1946, upon his claim of United States citizenship by the presentation of a birth certificate and a baptismal certificate to the Immigration Service.
 
 
 3
 The statements of the plaintiff before a Board of Special Inquiry of the Immigration Service in 1947, 1950 and 1952 were introduced in evidence. There was a stipulation that, if the officers were called, they would verify his answers as shown in the transcript. Plaintiff swore that he did not make the answers and that he had not knowingly remained in Mexico in order to avoid military service.
 
 
 4
 The District Court determined that although plaintiff was a citizen by birth he had expatriated himself by remaining outside the jurisdiction of the United States in order to avoid training and service in the armed forces of this country in time of war.[1] Plaintiff claims the United States had the burden of proof to show Gonzales was no longer a citizen. The trial court followed the contention. We do not have to pass upon the validity thereof. The trial judge decided the questions of fact. If the judgment had substantial evidence to support it, this Court should affirm.
 
 
 5
 Under our system, citizenship is a matter of voluntary choice. This country fought a war largely upon the issue that subjects of foreign potentates who voluntarily become American citizens had the right lawfully to expatriate themselves. This power is accorded to American citizens by birth or naturalization. The recent statute defines in general the acts whereby an American citizen may voluntarily expatriate himself.[2] This Court once held that a citizen by birth could be expatriated during minority by act of the parents.[3] This holding went too far and was wrong.[4] But a voluntary act of a party which clearly indicates a desire for and is declared by law to result in expatriation is conclusive. The statute which lists these acts is constitutional.[5]
 
 
 6
 It is probable that Gonzales had citizenship in the United States and in the Republic of Mexico during his minority. His registration for military service in Mexico would seem to indicate a choice of citizenship in that country.
 
 
 7
 But the ground which the Court chose here was that Gonzales was expatriated by his voluntary act with intent of avoiding military service. The plaintiff swore to the contrary. The finding of the Court is overwhelmingly supported by statements of plaintiff himself before the officers in 1947 and 1950. The objection urged here is that such statements are hearsay and inadmissible except for purposes of impeachment. The plaintiff's testimony in the record is contrary to these statements. From the facts then in the record, that plaintiff, an American citizen, remained in Mexico while the United States was involved in a war in which it was his duty to offer military service and that he made no effort to come within the borders until it was apparent the need for his service had passed, the Court might have drawn the obvious inference that the absence from the country was voluntary and for the purpose of evading military duty. If the trial court found plaintiff not credible as a witness and disbelieved his testimony in court as to a contrary state of mind, the case of plaintiff would then fail.
 
 
 8
 But these extrajudicial statements of plaintiff were not hearsay. These were substantive evidence. The extrajudicial statements of a party to the action, civil or criminal, are binding upon him and substantive evidence against him.[6] There is an additional reason for the admission of these well-authenticated utterances of plaintiff, since they were statements against interest and thus have further guarantee of verity.[7] They were clearly admissible for all purposes. The only question which gave pause at the threshold was whether these were admitted only for the purpose of impeachment. An examination shows that the record of the hearings, including these statements of plaintiff, was admitted upon stipulation of counsel for plaintiff for all purposes.
 
 
 9
 The judgment of denial of a declaration of citizenship is affirmed.
 
 
 
 Notes:
 
 
 [1]
 "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (j) Departing from or remaining outside of the jurisdiction of the United States in time of war * * * for the purpose of evading or avoiding training and service in the land or naval forces of the United States." Act, Oct. 14, 1940, c. 876, Title I, subchap. IV, § 401, 54 Stat. 1168, as amended Sept. 27, 1944, c. 418, § 1, 58 Stat. 746, 8 U.S. C.A. § 801(j)
 
 
 [2]
 Act, June 27, 1952, c. 477, Title III, c. 3, § 349, 66 Stat. 267, 8 U.S.C.A. § 1481 et seq
 
 
 [3]
 United States v. Reid, 9 Cir., 73 F.2d 153, reversing In re Reid, D.C.Or., 6 F. Supp. 800
 
 
 [4]
 Perkins v. Elg, 307 U.S. 325, 349, 59 S. Ct. 884, 83 L.Ed. 1320; MacKenzie v. Hare, 239 U.S. 299, 36 S.Ct. 106, 60 L. Ed. 297
 
 
 [5]
 This Court has said that it is bound by the statute unless it can be said that it is "clearly unconstitutional, a conclusion without rational foundation." Miranda v. Clark, 9 Cir., 180 F.2d 257, 259
 
 
 [6]
 "* * * all admissions, used against the opponent, satisfy the Hearsay rule, and, when once in, have such testimonial value as belongs to any testimonial assertion under the circumstances; and the more notably they run counter to the natural bias or interest of the partywhen made, the more credible they become; this element adding to their probative value, but not being essential to their admissibility." IV Wigmore on Evidence Sec. 1048 (3rd Ed.). Harrison v. United States, 10 Cir., 42 F.2d 736, 737.
 
 
 [7]
 "The modern rule, as we see it, is that a statement (even though unsworn) is admissible as substantive evidence, if the fact asserted in the declaration is so far contrary to the declarant's pecuniary or proprietory interest, or so far subjects him to criminal or civil liability, or renders him an object of hatred, ridicule or social disapproval, that a reasonable man would not have made such a statement unless he believed it to be true." Schoeps v. Carmichael, 9 Cir., 177 F.2d 391, 398, certiorari denied, 339 U.S. 914, 70 S.Ct. 566, 94 L.Ed. 1340; V. Wigmore on Evidence Sec. 1455, et seq