QUONG SUE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1902.)

No. 745.

1. CHINESE—DEPORTATION—RESIDENCE—EVIDENCE.

A judgment for deportation of a Chinese laborer found without a certificate of registration provided for by Act May 5, 1892, § 6, unless he establish to the satisfaction of the court by credible witnesses that he was a resident of the United States at the date of the act, will not be disturbed, though there was undisputed testimony of a white person that he came to P. in 1893; that while there he saw the Chinaman at a store, and "he worked in the store there, and I think he was interested. I think he was a partner. * * * I saw several Chinamen. I used to sit around there a good deal, and there was a dozen or more, and there seemed to be three or four or five of them working as partners, I suppose. I understood they were partners together. It was a kind of a family affair."

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

Humes, Miller & Lysons, for appellant.

Wilson R. Gay, U. S. Atty., and Edward E. Cushman, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. Appellant, on May 2, 1901, was arrested, charged with being unlawfully in this country. The case was

referred to a commissioner, who, after hearing the testimony, ordered and adjudged "that the defendant herein be deported to the empire of China." An appeal was taken to the district court, and the court, after hearing, "ordered and adjudged that the finding and judgment of said commissioner be and the same is affirmed," and further ordered that the defendant be deported to China. It is claimed that the court erred in rendering this judgment. The contention of appellant is that the undisputed evidence shows that he had resided continuously in the United States since 1880, when he was 15 years of age; that he then joined his father, who had, with others, previously established a mercantile business at Portland, Or.; that he joined his father and entered into the employ of the firm, and continued in such employment until the year 1890, at which time he acquired an interest in the business, and became a partner with his father and others in the mercantile firm of Quong Yuen Chung Company; that he continued in business as a merchant until 1896, when his place of business was destroyed by fire; that this so impoverished him that he has since been obliged to labor for a living; that in the year 1901 he went to work in a cannery at Point Roberts, Wash., as a laborer, and in about one month thereafter he was arrested.

There is no evidence that he had ever been registered under the provisions of section 6 of the act of May 5, 1892, as amended by the act of November 3, 1893 (28 Stat. 7), or received any certificate as required by said act. He claimed his right to remain in this country solely upon the ground that during the time within which Chinese laborers might have been registered he was engaged in business as a merchant. The court, in the course of its opinion, said:

"If the facts are as claimed by the defendant, there would be a question as to the duty of the court to make a finding that he had been prevented by an unavoidable cause from obtaining a certificate at the proper time, and to delay the sentence of deportation until he could have an opportunity to obtain a certificate, but the evidence is not sufficient to support any such finding."

Section 6 of the registration act expressly provides that a Chinese laborer found within the jurisdiction of the United States, without a certificate of registration, "shall be deemed and adjudged to be unlawfully within the United States," and be deported therefrom, as provided in the act, "unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness or other unavoidable cause he has been unable to procure his certificate, and to the satisfaction of the said United States judge, and by at least one credible witness, other than Chinese, that he was a resident of the United States on the 5th of May, 1892." This court has repeatedly held, under this and other similar provisions in other of the Chinese exclusion acts, that the court below must decide for itself whether the evidence is satisfactory or not; that the fact that the court refused to accept and act upon the testimony of Chinese or other witnesses, though uncontradicted or impeached, is not of itself ground for reversal. Lee Sing Far v. U. S., 35 C. C. A. 327, 94 Fed. 834, 838, and authorities there cited; Woey Ho v. U. S., 48 C. C. A. 705, 109 Fed. 888–891, and authorities there cited.

In the last case the court said:

"It may be said that the present case comes nearer the border line beyond which courts must not go than the case of Lee Sing Far, but it is enough to say that it does not cross it. It is true that in all the Chinese cases this court has been enabled and taken pains to point out the unreasonable, improbable, and unsatisfactory points in the testimony which justified the trial court in disbelieving it. This duty, however, rests with the trial courts, and, in a certain sense, may be said to be optional with them. If no reasons are given for their action, this fact does not of itself furnish a sufficient ground to justify a reversal. Error must affirmatively appear. This court cannot assume that the court below acted arbitrarily in refusing to believe the testimony of any witness. The testimony in this case is not, as claimed, above suspicion."

The same can be said of the testimony in the present case.

Mr. Elliott, a white witness, testified that his home was in Louisville, Ky.; that he had lived in Portland, Or., and in California; that he was a painter, and followed that business; that he first came to Portland in 1893, when he was 20 years of age; that while there he saw the defendant in Portland at a Chinese store near his place of business. "Q. Did he have a place of business there? A. He worked in the store there, and I think he was interested. I think he was a partner in the store. I think I never inquired. * * * Q. Did you see any other Chinamen around the store working there besides this Quong Sue? A. Yes; I saw several Chinamen. I used to sit around there a good deal, and there was a dozen or more, and there seemed to be three or four or five of them working as partners. I suppose, I understood they were partners together. It was a kind of a family affair." This testimony, although undisputed, falls far short of being satisfactory. It is evident that the court did not err in holding that the evidence was "not sufficient" to justify a finding that the defendant was entitled under the law to be registered on the ground that he had been a merchant. From an examination of all the evidence contained in the record, we are satisfied that the judgment rendered in the court below is correct.

The judgment of the district court is affirmed.